Next case this morning is United States v. Lara, No. 236057. Counsel, you may proceed. Good morning, Your Honors, and may it please the Court. My name is Alyssa Donovan Farrell. I represent the appellant, Mr. Lara. Counsel, could you put the, thank you. This case is about how we assess an abortion blame among co-conspirators at sentencing. It considers the evidence that's required to properly assess the relative culpability of a defendant seeking a mitigating role adjustment and whether the guideline for imported methamphetamine applies where the defendant had no knowledge that the meth had been imported. In 2015, Congress made an important amendment to the mitigating role guideline because courts were inconsistently applying and more sparingly applying that guideline than the commission had intended. The crux of that guideline is the defendant's relative culpability. We get that from the Urich case, which both the government and the defendant cited in their briefs. It's a case from 2019. Comparative analysis must be conducted after that 2015 amendment, and so I would caution the Court to look very carefully at any cases that are cited before the 2015 amendment. To whom do we make this comparison of relative culpability? That is the crucial point in the amendment. The comparison is to be made internally and not externally, and that became an issue in this case when the government reached beyond the conspiracy at hand, the conspiracy to which this defendant had agreed, and talked about the Irish mob. The government actually talked about the Irish mob, and then the Court, in making its determination of whether the guideline applied, did not in any way caveat or qualify its finding. So in terms of the Irish mob argument, that's an argument that came up really briefly that the government seemed to say and colloquially with the District Court, oh you know we had a case and this this came up, and you may remember by by analogy, it didn't seem like an affirmative argument in the way that the defense is describing it, nor do I see anything in the record that suggests the District Court seized on that and incorporated it into its own analysis or reasoning. It covers about a page of the transcript, and the government attorney says that I, in the context of the Irish mob case, he then talks about capos, he talks about hierarchy, and then he does talk, it's to pretty good length, about what happened in this case. And we have several levels that are all, every single one of these levels, above Mr. Lara. And so he talks about the Hernandez DTO, which occurred over at least a four-year period. We've got Mr. Lara for 24-36 months. He talked about all of these distributors being in the Oklahoma area. This is one of many distributors that he's considering, the Hernandez DTO. He talked about Mariano Cruz being a distributor in bulk quantities, significant bulk quantities. And again, we have Mr. Lara having no interaction with Mr. Cruz until this 24-36 hour period. These comparisons, these factors that the court must consider per the 2015 amendment were fully briefed by the defendant in four to five pages over his sentencing memorandum and the motion. And the government omits many of these significant factors and does pretty much focus on the IMG and the hierarchy that the defendant had already briefed, showing that there is absolutely no one lower than Mr. Lara in this analysis. And I would compare this to another case this court has had, the Delgado-Lopez case. In that case, because the district court used the wrong legal standard, it ended up getting remanded. But I think that the dissent in that case, which was authored by Judge Ide, provides us some and adopted by the court, saying that the quantity, the drug quantity is indicative of trust. That's not true in this case. It has been true in many other cases. And those cases recited in the dissent of the Delgado-Lopez case. But in every one of those cases, that person was in charge, at least of the trafficking, of the currying. He was choosing the route. He was choosing the vehicle. He had direct communication with other individuals. There were multiple trips. There was cross-country transportation. And none of that happened in this case. So we cannot infer trust simply from amount without any of those other connectors. And there's no case in which that has happened before this court. I would note a few other things that Judge Ide did notice. Conclusory determinations, especially when they're based on speculation, are not sufficient as evidence of what supports that finding of trust. The majority said pretty clearly that we can't make a conclusion either in the defendant's favor or the government's favor. And Judge Ide said that he was responsible to this degree, and that indicated trust. Well, responsibility is one of the factors that we briefed. It's one of the factors in the 2015 amendments. And responsibility is not shown anywhere in this case. As a matter of fact, you could take Mr. Lara out of this transaction, and it still would have happened. That alone shows how unimportant he was to the overall scheme of what was going on. The court merely said that he was involved enough, that I believe that he had enough of a role. This is not a comparative analysis. Counsel, so I'm having trouble disaggregating what I thought were two arguments that you were making in your brief. One was on clear error, which had to do with the consideration of the factors under the guideline. And the other, I thought you were on plain error on an argument that the court used an incorrect legal standard in not assessing the quote-unquote mathematical middle. Are you making both of those arguments, or are you focusing only on what I understood as your first argument on clear error? Well, certainly we believe that the wrong law was applied. Okay, when we reached outside of that conspiracy, we know that we're not supposed to go outside the conspiracy we were If the wrong law is applied, we must revand, and that's de novo review. Could I just ask you on that point, Peggy, that the argument that it was errors, that improper comparisons were made, correct? Improper comparison to go outside of the conspiracy, and no comparison other than that. Okay, and your argument is that that's what the district court did sentencing. It is, and I realized that the government kind of attacked us on that, saying, well, the court, and I understand the judge's argument there, did the court really consider the IMG? Well, because he didn't caveat what he said. That wasn't really where I was going. I apologize. My question is, at sentencing, did the defense make an objection then to the court making those comparisons? To the IMG? This was fully briefed that the comparison should be made internally as opposed to externally. Was there any objection to the comparisons that were made by the district court at sentencing? There was no opportunity for that objection to be made until the court said, do you understand our findings as to the sentencing guidelines? And at that time, the defense counsel stood up and said, we preserve our objections previously made, and the court said they are so preserved. But was there any objection to the rationale and the comparisons that the district court made at sentence? Specifically to the IMG? No, Your Honor, there was not. And is that why we're on plain error? I don't believe we are on plain error. Well, I take it we aren't on plain error because you haven't argued plain error, right? That's correct. Okay, but if we are, if there was waiver, then there's waiver. Because you haven't argued plain error. I would point the court to the case of, there are a couple of cases here. First of all, the Murphy case, which this court heard recently in 2024, the defendant does not waive appellate review of discrete theories that built upon a that Murphy case was decided just about a week and a half ago by this court. That dealt with Rule 29, but the same thing applies here. We made an argument, very thorough argument, about how you define the scope of the conspiracy, and that it is, you are not permitted to go outside of that scope. I'm sorry, I'm still not sure I have an answer to my question. I thought you had two arguments, and one was on clear error about the consideration of the factors that the guideline directs, and the other was the legal standard that concerns how the district court is to conduct a comparability analysis by assigning a mathematical middle. Are you not making that latter argument anymore? The latter argument is that whether it has to be mathematical or qualitative, that there must be a relative comparison made. I thought your whole argument turned on that there had to be a mathematical middle, that this was the district court's failing in deriving that data point. Perhaps I unartfully said that in the briefing. There must be an articulation of who the participants are, so that we can understand whether Mr. Lara is substantially less culpable than the average participant. And what did the defense do to put the district court in the view? We outlined all of the factors, and so the factors in the 2015 amendment tell us how we get to a determination of whether he was or was not substantially less culpable, because it helps us define where he falls within the whole scope of that conspiracy. So step one, we have to get the conspiracy right, because if we don't, then we are going to skew the analysis of who is average in that conspiracy. Who are the participants? Tells us whether our individual is average. And as far as the actual facts itself, we laid out everything from the fact that he was a mere participant, or mere passenger, along with Mr. Juarez-Serato. That individual is almost completely ignored by the government. That individual is the one who is determining the route they take, the car they use, where they go, communicating with all of these individuals. Mr. Lara has none of that, and there is not a single participant in this conspiracy, as discussed either by the government, the court, or the defense, who put Mr. Lara below. There's nobody below him. He is the lowest person. I'll acknowledge there are some times when there is nobody who gets a mitigating role, but that's not the case here, because in all of those cases, the culpability is to equal to Mr. Lara, and there's nobody lower than Mr. Lara. And absent any of that information, when the court does look at clear error as to the facts, there's simply nothing to support the finding that it's not. I think that if we were to move to the question of whether the importation of methamphetamine requires knowledge, I would point the court very specifically to where the Fifth Circuit failed here. Counsel, before you do that, why do we need to reach that issue if the district court made an alternative finding here? Did the district court make an alternative finding upon which we can resolve this issue? And that's a great question, because I think we have to look at the words that the district court used. The district court said, fair probability that he knew or should have known. It's the government's burden to prove preponderance of the evidence. Fair probability, as defined by we could guess that he might be involved. Well, that might be a valid objection, but did you make it? Did the defense make that objection when the court articulated that alternative ground? The question is, did we object to whether when the court said fair probability? We didn't, but we didn't have to, because the court in that case said, we're following the Fifth Circuit, and we believe knowledge is required. Wait a minute. Did you object or not? We did not object and did you object in your brief on appeal? We didn't bring up the question of fair probability. Honestly, I didn't. No, no. The alternative ground. The court said this is an alternative ground. You didn't object in district court. Defense didn't object in district court. You're not raising an appeal. Have you waived any objection to that? So, I don't believe we have, because we brought it up in the reply. We did not brief it in the opening brief. That is correct. It was brought up by the government, and in the reply, we did cover whether or not the court adequately could support any of those findings. And is that because in the defense's view, the district court didn't really make an alternative finding? Yes, Your Honor, it is. And so, we didn't see it as an issue, honestly, until we saw it as responded to by the government. I would, with the court's permission, reserve the remainder for any questions. Thank you, Your Honor. Morning, Your Honors, and may it please the court. My name is Stephen Hoke, arguing on behalf of the United States. This court should find that the district court committed no error when sentencing the appellant, Daniel Morales Lara, in this matter. And I want to first discuss the line of questions regarding waiver as to Mr. Lara's challenges to district court's legal application of section 3B1.2. Mr. Lara, when the pre-sentence investigation report was issued in this matter, objected to the content of the PSR. He objected to the recommended denial of the absence of a mitigating role adjustment. He expounded on that reasoning in a sentencing memorandum that he filed with the court. But now, he's objecting to district court's explanation for its sentence rather than the content of the PSR. And simply preserving that objection at the sentencing hearing did not alert the court to an error to its explanation, to its legal explanation at the sentencing hearing. And I think two cases are instructive in this regard. One is United States v. URIC. That's a Tenth Circuit case from 2019 in which the defendant, in which this court noted that objecting to the PSR would not have alerted the district court to an error in its explanation. So the review was confined to plain error. But it was only confined to plain error because the defendant did in fact argue for plain error in its reply brief. Here, there was no such argument ever made in the opening brief or in the reply brief. But aren't there two errors? We're talking about the 3B1.2 issue. There's two errors that are the government does not contest as preservation on, right? As to the clear error? Yes. Yes, Your Honor. Okay. So your argument is as to what is the legal argument precisely that you say is the defense is on plain error for here? Your Honor, the United States interprets Mr. Lara's argument to be that essentially the district court erred in two ways. One, by incorrectly defining the scope of the participants against whom he was compared, which was discussed with respect to the Irish mob. And then two, by failing to identify an average or mathematical participant on the record and articulate those five factors and how those five factors applied to him. So that's the United States' understanding of Mr. Lara's argument. So for each of those issues, the United States' position is that Mr. Lara's argument in that regard has been waived. And I would direct the court also to another case that's instructive here. That's United States v. Combe, a Tenth Circuit case from 2021. Again, this court was addressing Section 3B1.2 and observed and dicta that there's an argument to be made that the issue was forfeited when the appellant did not argue, did not preserve the error by simply objecting to the PSR. But again, this was dicta because the government never raised the issue. So the error is preserved as the argument that's not before us. The argument is waived, is what you're saying, right? Correct, Your Honor. And with that, I'll shift to the clear error argument that Mr. Lara addressed. And that's that here a mitigating role adjustment is based on the totality of the in which the defendant bears the burden of showing that they are entitled to a mitigating role adjustment. I think it's crucial to point out that Mr. Lara presented no evidence in support of his claim. He rather generally alleged that the average participant was involved for much longer periods of time and involved with very large quantities of methamphetamine. But I would submit that 200 plus pounds of methamphetamine is a very large quantity of methamphetamine. And the district court rejected this position on the record at sentencing. The district court noted that despite the short period of time in which Mr. Lara was involved, his conduct was quite significant. The district court used the phrase Mr. Lara jumped straight into the deep end. At the end of the day, he was transporting, as I mentioned, over 200 pounds of methamphetamine and over a quarter of a million dollars on behalf of an international drug trafficking organization. Didn't the government sort of misdirect the court's inquiry by focusing on the IMG? No, Your Honor. The government's position, the government's reference to the IMG was in the context of the importation enhancement, not with respect to the mitigating role adjustment. And the government was essentially arguing that given the quantity of methamphetamine that we're dealing with here, it flies in the face of reason to suggest that Mr. Lara would not know the chain of command, it would not know that these drugs are imported from Mexico. And also, I would also point out that as we noted in our brief, even if the district court did compare, and there's no indication that it did, but did compare Mr. Lara to some of these Irish mob members, that comparison is arguably appropriate because they are effectively uncharged co-conspirators. In fact, the United States' investigation into the Irish mob is what led to its subsequent investigation. You've never made that argument before, right? The one you just made right now. We noted it in our response brief, but we did not make it at sentencing, no. And although the district court did not expressly acknowledge or discuss the factors on the record, the district court did acknowledge that it had received and read a sentencing memorandum that was filed on Mr. Lara's behalf, which as opposing counsel noted, went into several pages of analysis as to why these factors favored this mitigating rule adjustment, and it ultimately determined that no such adjustment was appropriate. Have we ever held that 3B1.2 requires specific fact-finding from the district court on the record fact-finding? No, Your Honor. In fact, in United States vs. Combe, this court noted that a district court is not required to make detailed findings or explain why an adjustment is or is not appropriate under the guidelines. There's no requirement under this court's factors on the record, and absent any indication on the record, district judges are presumed to know the law and apply it in making their decisions. Is there any reason in the government's view why that 2015 amendment should change our thinking on that? No, Your Honor. Okay. And unless there are any further questions on issue one, I'd like to turn now to issue two. And there's a lot of questioning regarding the district court's alternative finding in this case. Mr. Lara did not challenge the district court's alternative finding. Was it actually an alternative finding that the district court? Yes, Your Honor, it was. What explains that it was an alternative finding, which in my view would require that the court found as an alternative that the government satisfied its burden by a preponderance? Your Honor, to paraphrase the district court, the district court, after stating that it has consistently held that the knowledge requirement does not apply to import a methamphetamine stated, and I would take that ruling a bit further and suggest that even if the knowledge requirement were to apply in some form or fashion, whether that's actual knowledge or reasonable foreseeability, I do think that the circumstances here demonstrate that Mr. Mr. Lara, I think he said there's a fair probability that Mr. Lara knew or certainly should have reasonably known that the methamphetamine that he handled here was imported. And as I mentioned, Mr. Lara does not challenge that alternative finding, and the court may affirm on that basis. Well, but fair probability is not preponderance, so why shouldn't that give us pause? Your Honor, although he did not say I find by a preponderance of the evidence that Mr. Lara knew or reasonably should have known, I think you have to look at the broader context of what he was saying, which was that certainly, even absent this knowledge requirement, there's an indication here that Mr. Lara knew or read, and I think he uses the phrase, certainly reasonably should have known that the methamphetamine was imported here. So I don't think this court should attribute too much weight to the fact that he simply used the term fair probability. And I would again highlight the fact that Mr. Lara did not challenge this alternative finding. And I would also note that this finding is thoroughly supported under the record. Mr. Lara was working for the cartel, which was controlling the area of Mexico which he lived by his own self-admission. He handled over $250,000 in cash that was packaged in a manner consistent with being shipped across the border to avoid detection. The amount of methamphetamine he handled, over 200 pounds, certainly represents an industrialization of methamphetamine production. And then finally, he was carrying out tasks at the behest of a Mexico-based source of supply, whether that was Oscar Hernandez, the leader of the DTO, or someone immediately below him. If this court were to reach the issue of statutory interpretation, this court should find that section 2D1.1b5's knowledge qualifier does not apply to imported methamphetamine, and it should do so based on the plain text history and purpose of the guideline. To date, only two circuits have considered this exact issue. That's the Fifth Circuit in United States v. Surfoss from 2012, and the Eighth Circuit in United States v. Workmeister in 2023. And I would also direct this court's attention to the fact that the Tenth Circuit has stated in plain language appears to impose a scientific requirement only with respect to listed chemicals, and that's from Beltran-Aguilar in 2011. To get back to the Fifth Circuit and the Eighth Circuit, the only two courts to have expressly considered this issue, both courts concluded, based on the plain language, that the knowledge qualifier modifies listed chemicals and not the importation of amphetamine or methamphetamine. And that's because were, in the operative phrase here, is a plural verb and cannot apply to the sentence's disjunctive subject, which would include amphetamine or methamphetamine. Because the subject has two singular verbs, excuse me, two singular words, it would require a singular verb. It would require was. Mr. Lara's proffered reading would also render two words, both importation and unlawfully, superfluous. Importation would be used twice and therefore be redundant. And then unlawfully is also unnecessary if referring to methamphetamine because there's no situation in which methamphetamine can lawfully be imported. Would the lack of a knowledge requirement pose the potential of producing arbitrary sentences? And what I mean by that is a defendant would serve more time if the drugs happened to be imported, whether the defendant knew about it or not. It's just bad luck. Your Honor, I think as the United States v. SURFOS, exposing a drug trafficker to all consequences, whether intended or unintended, is a rational deterrent to criminal activity. And so I think certainly it's sort of an assumption of the risk idea. Exactly, Your Honor. Yes. And I would like to point out that a few of the cases cited by Mr. Lara in the brief are in opposite here. That's United States v. Job. The Ninth Circuit did not expressly interpret the guideline. It noted rather that the government had not advanced the strict liability argument in district court and rather sought to to apply to increase based on jointly undertaken activity. And the district court made no findings as to statutory analysis done. And then Mr. Lara also cites United States v. Hernandez Astudillo from the Eleventh Circuit. But the issue there was simply whether the methamphetamine itself was actually imported. The issue was not one of knowledge. And that's also an unpublished case. So you disagree that there's a split or an evolving split? Yes, Your Honor. Only two circuits have expressly addressed it in published opinions. And that's the Fifth Circuit and the Eighth Circuit. And we would ask that if we end up thinking that there are two reasonable readings, one with the knowledge requirement, one not, so that we have ambiguity, would the rule of lenity kick in? If this court were to conclude even after reviewing based on based on the plain language, the super fluidity I discussed, and I would also note the history of this guideline. No, I know. I know these are your arguments that it's not ambiguous, but let's say we can't. We just can't get there. What about lenity? If at the very end of the day, this court determines that it's truly ambiguous, then the rule of lenity would apply. Yes. If there are no other questions, the United States asks that this court affirm Mr. Daniel Morales' sentence. Thank you. Thank you. Thank you, Your Honor. I have a few very quick points. Income, which the government cited, says absent something in the record otherwise, indicating otherwise, and that is exactly what happened here. Because there's a reference made by the government to the IMG, then it is assumed absent some caveat or qualification that the court took that into consideration. In bowing further support, cited by both government and the defendant, the court is not required to give detailed findings, but when it is apparent from the court's optional discussion that its factual finding may be based on an incorrect legal standard, as here the IMG and no relative comparison, then this court must remand for application under the correct legal guideline. Secondly, the government said that the IMG was only in the context of importation, and that's not true. Your Honor, I see my time is up, if I may finish my thought. You want to finish the thought? The thought there is that very specifically in the record it says I'm starting with importation because I think it dovetails with what I want to say about offense, and then it incorporates the IMG, which took place four years prior and does not fit relevant conduct to apply to Mr. Lahr. Thank you. Thank you, counsel. Thanks to both of you for the arguments this morning. The case will be submitted and counsel are excused.